**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID THOMAS LEONHART | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-269 E |
| | ) | Magistrate Judge Maureen P. Kelly |
| PA BOARD OF PROBATION/PAROLE, | ) | |
| THE ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, THE | ) | |
| DISTRICT ATTORNEY OF THE COUNTY | ) | |
| OF CRAWFORD, | ) | |
| Respondents. | ) | |


**MEMORANDUM OPINION**

David Thomas Leonhart ("Petitioner") is currently serving a sentence of 5 to 10 years

upon a conviction of Aggravated Indecent Assault obtained in the Crawford County Court of

Common Pleas.  Petitioner pleaded guilty to the charge in a plea bargain where other charges

were *nolle prossed*.  Petitioner's sentence had an effective date of November 16, 2004,

rendering the completion of his minimum sentence to occur on November 16, 2009 and his

maximum sentence to occur on November 16, 2014.  In an August 24, 2009 decision, the

Pennsylvania Board of Probation and Parole ("the Board") refused to release Petitioner on parole

at the expiration of his minimum sentence in November 2009.

The Board gave as its reasons for denying Petitioner parole, the following:

YOU NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL
INSTITUTIONAL PROGRAMS.
YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF
RISK TO THE COMMUNITY.
THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF
CORRECTIONS.
YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

ECF No. 13-1 at 28 to 29.  It is the August 24, 2009 denial of parole which gives rise to this

habeas case.  Because we find none of the issues raised meritorious, Petitioner will be denied

relief.

## I.   PROCEDURAL HISTORY

In October 2009, Petitioner initiated the present action by seeking to file a Petition for

Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 ("the Petition"), challenging the Board's

denial of parole.   The Petition was formally docketed in November 2009, ECF No. 6, along with

a Memorandum of Law in support.  ECF No. 7.  In December 2009, the District Attorney of

Crawford County filed a short Answer.  ECF No.  10.  The Office of the Attorney General of

Pennsylvania filed a more comprehensive Answer also in December 2009.  ECF No. 13.

Petitioner and Respondents have consented to have a Magistrate Judge exercise plenary

jurisdiction.  ECF Nos. 2, 14.  The case was reassigned to the undersigned on June 20, 2011.

ECF No. 16.

## II. DISCUSSION

The Petition is not a model of clarity.  Petitioner contends that he is "challenging the

ongoing constitutionality of the Parole Procedures used in determining the rationale to deny me

Parole[.]".  ECF No. 6 at 15, ¶ 11(e).  In the space on the pre-printed habeas petition form where

Petitioner is asked to list ground one of his Petition, he wrote "Unconstitutional Rationale to

deny me parole by using no-relevant factors and/or procedures."  Id., at 15, ¶ 12.  Petitioner

asserted the following as the facts which supported his claim: "[d]uring my incarceration, I have

actively participated and completed all my prescriptive programs and have had no misconducts,

and furthermore, I was denied my substantive due process rights by the PA Board of Probation

and Parole by their unconstitutional rationale to deny me parole."  Id.  Unfortunately, Petitioner's

Memorandum of Law is not any clearer.  We will address Petitioner's arguments made both in the Petition and the Memorandum of Law.

### A.  FOURTEENTH AMENDMENT CLAIMS

Petitioner raises a Fourteenth Amendment claim.  From the Petition it is clear that Petitioner is raising a Fourteenth Amendment substantive due process claim.  ECF No. 6 at 15, ¶ 12.  From the Memorandum of Law, it appears Petitioner may also be raising a Fourteenth Amendment procedural due process claim.  ECF No. 7 at 3 to 5.

### 1.  PROCEDURAL DUE PROCESS

To the extent that Petitioner is making a procedural due process claim, it fails. Conducting a procedural due process analysis involves a two-step inquiry: the first question to be asked is whether the complaining party has a protected liberty interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).  A liberty interest can arise in one of two ways: 1) it can be derived directly from the Due Process clause of the Federal Constitution or 2) it can arise from the state's statutory scheme.  Asquith v. Department of Corrections, 186 F.3d 407, 408 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

It is well settled law that the Due Process clause of the Federal Constitution does not of its own force create a liberty interest in parole.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (stating that, "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole

revocation which implicates a liberty interest, from parole release decisions which do not).

Accordingly, if Petitioner is to assert a viable claim of procedural due process, he must show that

the law of Pennsylvania has created a liberty interest in parole.

Hence, the Court turns to the question of whether Pennsylvania law creates a liberty

interest in parole.  It is well established that Pennsylvania state law does not create a liberty

interest in parole.  See, e.g.,  U.S. ex rel. Schiano v. Luther, 954 F.2d 910, 916 (3d Cir. 1992);

Henry v. Bello, No. 92-4341, 1994 WL 27320, at *1 (E.D. Pa. Feb. 1. 1994)("However, the

Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide

whether to grant parole,  61 P.S. § 331.21;  therefore, the Commonwealth has not created a

liberty interest in parole.").[1]

Contrary to Petitioner's intimation, ECF No. 7 at 5 at numbered ¶ 2, the setting of a

minimum sentence by the trial court does not create a liberty interest in parole at the expiration

of the minimum sentence.  Because there is no liberty interest in parole, no matter what

procedures or lack thereof that the Respondents utilized and no matter what conditions or

requirements that they imposed, such do not violate procedural due process because any such

procedures and/or conditions merely deprive Petitioner of early parole, in which he possesses no

liberty interest.

### 2.   SUBSTANTIVE DUE PROCESS

In contrast to the focus of procedural due process on procedures, substantive due process

---

[1] See also Gregg v. Smith, No. 97-4894, 1998 WL 309860, at *2 (E.D. Pa. June 10, 1998)
("plaintiff has no protected liberty interest in receiving parole which is discretionary in
Pennsylvania...."); McFadden v. Lehman, 968 F.Supp. 1001, 1004 (M.D. Pa. 1997)
("Pennsylvania has not created an enforceable liberty interest in parole. . . ."); Nelson v.
Miranda, No. 96-CV2854, 1997 WL 327381, at *5 (E.D. Pa. May 6, 1997) ("Applying the
Sandin methodology to the case at hand, we find that Pennsylvania law has not created a
protectible liberty interest in parole hearing.").

prohibits certain government actions irrespective of the procedures which attend those actions. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities.").

The standards for analyzing a substantive due process claim appears to depend upon whether one is challenging legislative or executive action.  See, e.g., Evans v. Secretary, Pa. Dept. of Corrections, 645 F.3d 650, 659 (3d Cir. 2011); Wagner ex rel. Wagner-Garay v. Fort Wayne Community Schools, 255 F.Supp.2d 915, 922 (N.D. Ind. 2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'") (quoting Dunn v. Fairfield Community High School Dist. # 225, 158 F.3d 962, 965 (7th Cir. 1998)).  The parole board is an executive branch agency.  See  Goodman v. McVey, 428 F.App'x 125, 126  (3d Cir. 2011).   The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience.  See, e.g., Id.;  Evans, 645 F.3d at 659.  See also Benson v. Martin, 8 F.App'x 927, 930 (10th Cir. 2001) (explaining it is a habeas petitioner's burden to establish that the challenged action shocks the conscience).

Admittedly, the "shock the conscience" test is less than precise.  However, in giving content to this test, the Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'"  Chavez v. Martinez, 538 U.S.  760, 775 (2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

Petitioner fails to show that the Board's reasons for denying him parole shock the conscience or that such reasons constitute behavior that is intended to injure Petitioner in a way that is not justified by any government interest.   In this case, all of the reasons appear to further a legitimate government interest.  See, e.g., Ledwith v. Brooks, No.  Civ.A. 06-611, 2007 WL 804189 (W.D. Pa. March 14, 2007).

Progress by the parole applicant in the process of rehabilitation is a legitimate consideration for the Board and so the Board's denial of parole to Petitioner based upon its opinion that Petitioner needs to participate in and complete additional institutional programs in order to further his rehabilitation is not conscious shocking.  See McGinnis v. Royster, 410 U.S. 263, 277 (1973)(it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole").  Nor does the Board's consideration of Petitioner's lack of remorse in denying him parole shock the conscience.  See, e.g., McKune v. Lile, 536 U.S. 24, 32-35 (2002). Indeed, as declared in McKune, "[a]cceptance of responsibility is the beginning of rehabilitation." Id. at 47.  See also Johnson v. Baker, 108 F.3d 10, 12 (2nd Cir.1997) ("[a]n inmate who is unwilling to admit to particular criminal activity is unlikely to benefit from a rehabilitative process aimed at helping those guilty of that activity.");  Walters v. Ross, No. CV. 92-2290, 1992 WL 398307, at *3 - *4 n.2 (E.D.N.Y.  Dec. 21, 1992) (the Court found the parole board's consideration of "petitioner's refusal to accept full responsibility for his crime" was not "arbitrary and capricious").

Moreover, given that Petitioner pleaded guilty to the acts of Aggravated Indecent Assault, we cannot see how requiring him to be remorseful for his admitted acts implicates any Fifth Amendment right against self-incrimination, as Petitioner seemingly contends, ECF No. 7 at 6.

Cf. Mitchell v. U.S., 526 U.S. 314, 326 (1999) ("as a general rule, . . . where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final" which is the case herein, Petitioner's conviction was final long ago and the only question is whether he should be afforded the grace of parole).

We do not find that the Board's consideration of the DOC negative recommendation to be conscience shocking. See, e.g., Prever v. Barone, 428 F.App'x 218, 220 (3d Cir. 2011) ("Similarly, the PBPP defendants denied parole based on the DOC's negative recommendation, and Prevet's 'minimization of the nature and circumstances of the offense(s) committed.' We agree with the District Court that these are also legitimate penological concerns"). Neither does the Board's reliance on the risk and needs assessment, indicating that Petitioner poses a risk to the community, constitute conscience shocking behavior. Gordon v. Wenerowicz, Civ.A. No. 1:10–CV–1257, 2011 WL 5509538, at *4 (M.D.Pa., Nov. 10, 2011) ("Nor can it be disputed that the denial of parole was not arbitrary and capricious as it was based on the negative recommendation made by the Department of Corrections and various reports, evaluations and assessments of Gordon's risk of recidivism. He has failed to direct the court to any factor relied upon by the Board that could be described as 'conscience shocking.'").

Petitioner has not demonstrated that any of the factors upon which the Board relied in denying him parole shocks the conscience. Accordingly, Petitioner's substantive due process claim is meritless.

### 3.  EQUAL PROTECTION

Petitioner makes a one sentence reference to the Fourteenth Amendment and Equal Protection, ECF No. 7 at 8, seemingly implying that the Board's action in denying him parole

violated his Equal Protection rights. Given his lack of specificity in asserting this point, it

suffices as an answer to simply quote from the United States Supreme Court that state action

involving "discretionary decisionmaking based on a vast array of subjective, individualized

assessments" such as is the case with parole decisions, does not violate Equal Protection "when

one person is treated differently from others, because treating like individuals differently is an

accepted consequence of the discretion granted[.]" Engquist v. Or. Dep't of Agric., 553 U.S.

591, 603 (2008). More to the point though, in making its individualized determinations

concerning the many convicts who come before the Board, it is difficult to imagine that as to the

many unique individual characteristics of each candidate for parole, any one candidate is truly

"similarly situated" to any other candidate such that treating one differently results in treating

"similarly situated" individuals differently because they are, in fact, not "similarly situated."

Rowe v. Cuyler, 534 F.Supp. 297, 301 (E.D.Pa.1982) (it is difficult to believe that any two

prisoners could be considered 'similarly situated' for the purpose of judicial review on equal

protection grounds of broadly based discretionary decisions [such as parole determinations]"),

*aff'd*, 696 F.2d 985 (3d Cir. 1982) (Table).

Accordingly, the Court finds that actions of the Board did not violate any of Petitioner's

Fourteenth Amendment rights.

### B. FIFTH AMENDMENT

Petitioner claims, in a somewhat confusing manner, that the Board violated his double

jeopardy rights. ECF No. 7 at 6 to 7. Petitioner is simply wrong as a matter of law. As has

been explained by our learned colleague Magistrate Judge Mitchell in a similar case:

> The petitioner first alleges that his repeated denials of parole violated the
> double jeopardy provisions of the Fifth Amendment which prohibits "any person
> ... be[ing] subject for the same offence to be twice put in jeopardy of life or limb
> ..." This provision applies in criminal prosecutions and bars multiple punishments

for the same crime, *Hudson v. United States*, 522 U.S. 93, 98–99, 118 S.Ct. 488,
139 L.Ed.2d 450 (1997). It is not applicable to parole proceedings since petitioner
is not being required to serve a multiple or enhanced sentence but merely the
unexpired portion of his sentence. *North Carolina v. Pearce*, 395 U.S. 711, 717,
89 S.Ct. 2072, 23 L.Ed.2d 656 (1960) *overruled on other grounds Alabama v.
Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). . . . Thus he has
failed to state a double jeopardy violation.

Hailstock v. Bickle, No. 2:11–cv–1071, 2011 WL 6826823, at *2 (W.D. Pa. Dec. 28, 2011).  In

like manner, Petitioner has failed to show that the Board's denial of parole violated any Fifth

Amendment right against double jeopardy.  Accordingly, this claim is without merit.

### C.  Sixth Amendment

Petitioner, in yet another conclusory assertion, contends that the Board's denying him

parole violates his Sixth Amendment right to have a jury determine every essential fact necessary

to justify the imposition of a "longer sentence," relying upon the progeny of cases from Apprendi

v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); and United

States v. Booker, 543 U.S. 220 (2005).  Petitioner is again simply mistaken on the law.  The

cases Petitioner relies upon simply bar a judge from finding any fact necessary in order to

impose a sentence beyond the statutory maximum for the crime that a jury found the convict

guilty of.  Here, however, no judge found any fact to extend Plaintiff's sentence beyond the

statutory maximum sentence permitted for Aggravated Indecent Assault, nor did the Board find

any such fact, nor was Petitioner's sentence extended beyond the statutory maximum.   The

maximum sentence permitted under Pennsylvania law based upon his conviction for Aggravated

Indecent Assault was at least 10 years.[2]  The Board's denying him parole after Petitioner served

only his minimum sentence of five years does not violate the Sixth Amendment prohibition on

---

[2]  See ECF No. 10 at 1, ¶ 2, indicating Petitioner was charged with violating 18 Pa.C.S.A. §
3125(7), and also indicating that such was a felony of the second degree.  Felonies of the second
degree are punishable by a term of imprisonment of not more than 10 years.  18 Pa.C.S.A. §
1103(2).

judicial enhancement of sentences beyond the statutory maximum because Petitioner is not being made to serve a sentence in excess of 10 years, i.e., the statutory maximum for Aggravated Indecent Assault.  See, e.g., Cobb v. Smith, No. 4:05-CV-581, 2005 WL 3159315, at *4 (M.D.Pa., Nov. 28, 2005) ("It is difficult for the court to determine if Cobb is also asserting that holding of *Blakely* should also invalidate the parole board's decision to deny him parole. If that is his argument, however, it is also patently without merit. The United States Supreme Court in *Blakely* addressed the determinate sentencing scheme of the State of Washington, stated that a parole board operating in an indeterminate sentencing scheme may rule on facts in the exercising of discretion, and that a parole board's ruling on facts did 'not pertain to whether the defendant has had a legal *right* to a lesser sentence-and that makes all the difference as far as judicial impingement upon the traditional role of the jury is concerned.' *Blakely*, 124 S.Ct. at 2540. (italics in original)").

### D.   MISCELLANEOUS CONSTITUTIONAL CLAIMS

Petitioner further asserts that the denial of parole by the Board violated numerous other provisions of the United States Constitution.

### 1.   EX POST FACTO

Petitioner contends that the Board's denying him parole violated his rights against Ex Post Facto laws.  U.S. Const. Art. I, § 10, cl. 1. He bases this claim on the fact that at some date undisclosed by Petitioner, then-Governor Ed Rendell allegedly issued a "Moratorium" on the granting of parole which Petitioner apparently believes somehow affected the Board's decision. ECF No. 7 at 8 to 9.

The Ex Post Facto Clause of Article I, Section 10 the United States Constitution prohibits "the enactment of any law which imposes a punishment for an act which was not punishable at

the time it was committed; or imposes additional punishment to that then described." Coady v.

Vaughn, 251 F.3d 480, 487 (3d Cir.2001). The clause "is aimed at laws that retroactively alter

the definition of crimes or increase the punishment for criminal acts." California Dep't of

Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

To determine whether a retroactive change in parole standards violates the Ex Post Facto

Clause, a court must determine, first, whether the legislative changes were, in fact, retroactively

applied in the inmate's parole determination. Miller v. Florida, 482 U.S. 423, 430 (1987).  Only

then would the court need to assess whether the legislative changes "produce[d] a sufficient risk

of increasing the measure of punishment attached to the covered crimes" with respect to that

particular inmate. Morales, 514 U.S. at 509. The petitioner bears the burden of proof that the

retroactive application of the changes "will result in a longer period of incarceration than under

the earlier rule." Garner v. Jones, 529 U.S. 244, 255 (2000).

Unfortunately for Petitioner's argument, Petitioner fails to show that the  alleged

moratorium had any effect on the Board's decision to deny Petitioner parole which was made on

August 24, 2009.  This is because the moratorium was completely lifted by December 1, 2008.

See, e.g., Wicker v. Pa. Bd. Of Probation, No. CIV3:CV-09-0167, 2010 WL 1253498, at *2

(M.D.Pa., March 24, 2010) ("On September 29, 2008, Governor Rendell announced a parole

moratorium pending a review of the process by which Pennsylvania offenders, especially violent

offenders, were released after two Philadelphia police officers were shot and killed by

Commonwealth paroled offenders within a few months of each other. . . . The moratorium was

lifted on October 20, 2008, as to non-violent offenders, and then completely lifted as to all state

convicts on December 1, 2008.").  Hence, Petitioner has failed to carry his burden to show that

the moratorium, lifted at least eight months earlier, affected the Board's denial of parole to

11

Petitioner occurring in August 2009.

### 2.   BILL OF ATTAINDER

Petitioner appears to contend that the Board's action in denying him parole amounted to a Bill of Attainder in violation of U.S. Const. Art. I, § 10, cl. 1.  A bill of attainder has been defined as a "'law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.' " Selective Service System v. Minnesota Public Interest Research Group, 468 U.S. 841, 846-47 (1984) (quoting Nixon v. Administrator of General Services, 433 U.S. 425, 468 (1977)).  Merely defining what a "Bill of Attainder" is, demonstrates that the Board's action in denying Petitioner parole does not constitute such.  The Board's denial does not inflict punishment on Petitioner without the protections of a judicial trial.  In fact, the punishment imposed by the judiciary was that Petitioner could serve a sentence of up to 10 years.  The Board has merely permitted that judicially imposed punishment to continue after the expiration of Petitioner's minimum sentence. The significance of the setting of a minimum sentence is simply to set a date as to when a convict first becomes eligible for parole.  Ledwith v. Brooks, 2007 WL 804189, at *4 n.4.

### 3.   SEPARATION OF POWERS

Next, Petitioner contends that somehow the Board's denial of parole to him violates the separation of powers guarantee, apparently suggesting that the Board is interfering with the judiciary's role in sentencing.   It is not clear whether he is complaining of the United States Constitution's separation of powers or the State of Pennsylvania's Constitution's separation of powers. ECF No. 7 at 9 to 11.  To the extent he complains that the Board's actions violate the United States Constitution's separation of powers guarantee, there are many problems with this contention but the main one we rely upon is that the federal Constitution's separation of powers

guarantee applies solely to separate the powers of the organs of federal government and does not compel a similar separation of powers between a State's branches of government.  Sweezy v. New Hampshire, 354 U.S. 234, 255 (1957)("Moreover, this Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments."); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1102 (7th Cir. 1995) ("the federal Constitution does not prescribe any particular separation of powers, or other internal structure, of state government.");  Ragsdale v. Turnock, 941 F.2d 501, 510 (7th Cir. 1991) ("separation [of power within the state government] is not a proper matter of federal judicial concern."); Shelton v. City Of College Station, 780 F.2d 475, 482 n.2 (5th Cir. 1986)("The guarantee of a republican form of government by the federal constitution does not impose the doctrine of separation of powers upon the states, so that without the adoption of the rule by a state itself there is no requirement of separation of powers in state government.").

To the extent Petitioner is complaining that the Board's denial of parole violates the separation of powers principles of the Constitution of the Commonwealth of Pennsylvania, such a claim simply fails to provide a ground of relief in federal habeas proceedings as violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted.  Engle v. Isaac, 456 U.S. 107 (1982).

Accordingly, because we find none of Petitioner's additional arguments merit habeas relief, the petition will be denied.

### E.  CERTIFICATE OF APPEALABILITY

We conclude that jurists of reason would not find the foregoing debatable.  Accordingly, we deny a certificate of appealability.

/s/Maureen P. Kelly
Maureen P. Kelly
United States Magistrate Judge


Date:   March 2, 2012


cc:     David Thomas Leonhart
        GD-3475
        SCI Albion
        10745 RT 18
        Albion, PA 16475

        All counsel of record via CM/ECF